## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------------------X

DANIEL and PAULA SLEMMER,
Individually, and on behalf of all others
similarly situated,

                                Plaintiffs,

                v.

                                    Civil Action No. 12-cv-06542-JD

NCFI POLYURETHANES, a North Carolina
Corporation; and McLAUGHLIN SPRAY FOAM
INSULATION, INC., a Pennsylvania
Corporation,

                                Defendants.

-----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION TO DISMISS FILED BY DEFENDANT
## BARNHARDT MANUFACTURING COMPANY

Submitted by:

Jonathan Shub (Pa. Bar # 53965)
jshub@seegerweiss.com
Christopher A. Seeger
cseeger@seegerweiss.com
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102
T: (215) 564-2300
F: (215) 851-8029

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT…….......…………………………………………….……….1

I.     FACTS…….....……………………………………………….…….................2

II.    ARGUMENT……………………………………………………………..4

    A.    Motion to Dismiss Standard……………………………………………………4

    B.    Plaintiffs Properly Plead a Negligence Claim Against Defendant………………7

        1.    Plaintiffs Allege all Elements of a Negligence Claim ...................................7

        2.    The Complaint Properly Identifies Defendant's Negligent Conduct.............8

        3.    Plaintiffs do not Plead Separate Failure to Recall or Negligent Marketing Claims ........................................................................................................8

    C.    Defendant's Negligent Supervision of its Installers is Properly Pled……………10

    D.    Plaintiff's Strict Liability Claim Under Pennsylvania Law is Properly Pled……10

    E.    Plaintiffs Have Adequately Pled a Breach of Warranty Claim…………………..14

    F.    Unjust Enrichment is Properly Pled……………………………………………..15

    G.    Defendant Has Violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law………………………………………………….....16

        1.    Plaintiffs' Have Plead Reliance and Causation ...........................................16

        2.    The UTPCPL Does Not Require Vertical Privity.........................................17

        3.    F.R.C.P. Rule 9(b) Does Not Apply to UTPCPL Claims.............................18

    H.    Medical Monitoring and Injunctive Relief is Warranted………………………...19

        1.    Plaintiffs' Medical Monitoring Claim is Properly Pled................................19

        2.    Plaintiffs' Have Demonstrated the Need for Injunctive Relief....................21

CONCLUSION…………………………………………………………………………..22

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                                      **PAGE(S)**

*Altronics of Bethlehem v. Repco, Inc.*,
   957 F.2d 1102 (3d Cir. 1992)................................................................................. 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................... 5,6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. (2007).............................................................................................. 4,5,6

*Berrier v. Simplicity Manufacturing, Inc..*,
   563 F.3d 38 (3d Cir. 2009)................................................................................ 11, 12

*Brunwasser v. Trans World Airlines, Inc.*,
   541 F. Supp. 1338 .............................................................................................. 16

*Bugosh v. I.U. North Am., Inc.*,
   942 A.2d 897 (Pa. 2008)……………………………………………………....11

*Bugosh v. I.U. North Am., Inc.*,
   971 A.2d 1228 (Pa. 2009)……………………………………………………….11

*Caciolo v. Masco Contractor Services East, Inc.*,
   No. 04-962, 2004 WL 2677170 (E.D. Pa. Nov. 22, 2004) ...................................... 17

*Carpenter v. Shu-Bee's, Inc.*,
   No. 10-0734, 2012 WL 2740896 (E.D. Pa. July 9, 2012) ...................................... 11

*Covell v. Bell Sports, Inc.*,
   No. 09-2470, 2010 WL 4783043 (E.D. Pa. Sept. 8, 2010) ..................................... 12

*Durkot v. Tesco Equipment, LLC*,
   654 F. Supp. 2d 295 ........................................................................................... 12

*Erickson v. Pardus*,
   551 U.S. 89 (2007)............................................................................................... 5

*Flores v. Shapiro & Kreisman*,
   246 F. Supp. 2d 427 (E.D. Pa. 2002) .................................................................... 18

*Genter v. Allstate Property and Casualty Insurance Co.*,

No. 11-cv-0709, 2011 WL 2533075 (W.D. Pa. June 24, 2011) ............................... 18

*Giangreco v. United States Life Insurance, Co.*,
168 F. Supp. 2d 417 (E.D. Pa. 2001) ......................................................... 18

*Goode v. LexisNexis Risk & Information Analytics Group, Inc.*,
284 F.R.D. 238 (E.D. Pa. 2012) .................................................................. 5

*Greco v. Bucciconi Engineering Co.*,
407 F.2d 87 (3d Cir. 1969) ........................................................................ 15

*Hoffman v. Paper Converting Mach. Co.*,
694 F. Supp. 2d 359 ................................................................................. 12

*In re Burlington Coat Factory Securities Litigation*,
114 F.3d 1410 (3d Cir. 1997) ..................................................................... 6

*In re Elevator Antitrust Litigation*,
502 F.3d 47 (2d Cir. 2007) ........................................................................ 8

*In re Patterson* (Bankr. E.D. Pa. 2001)
263 B.R. 82 .............................................................................................. 18

*Jarzyna v. Home Properties, L.P.*,
763 F. Supp. 2d 742 (E.D. Pa. 2011) ........................................................ 16

*Lynn v. Yamaha Golf-Car Co.*,
No. 2:10-cv-01059, 2012 WL 3544774 (W.D. Pa. Aug. 16, 2012) ............... 11

*Martinez v. Skirmish, U.S.A., Inc.*,
No. 07-5003, 2009 WL 1437624 (E.D. Pa. May 21, 2009) ........................... 12

*Mertz v. Donzi Marine, Inc.*,
No. 04-55, 2007 WL 710263 (W.D. Pa. Mar 06, 2007) ............................... 18

*Milesco v. Norfolk S. Corp.*,
No. 1:09-1233, 2010 WL 55331 (M.D. Pa. Jan. 5, 2010) ............................ 12

*Phillips v. County of Allegheny*,
515 F. 3d 224 (3d Cir. 2008) ..................................................................... 6

*Pinker v. Roche Holdings Ltd.*,
292 F. 3d 361 (3d Cir. 2002) ..................................................................... 6

*Richetta v. Stanley Fastening System, L.P.*,

iii

661 F. Supp. 2d 500 ..................................................................................................... 13

*Rock v. Voshell*,
    397 F. Supp. 2d 616 (E.D. Pa. 2005) ....................................................................... 18

*Sansom v. Crown Equipment Corp.*,
    880 F. Supp. 2d 648 (W.D. Pa. 2012)................................................................. 11, 13

*Sheet Metal Workers Local 411 Health & Welfare Plan v. GlaxoSmithKline, Plc*,
    737 F. Supp. 2d 380 (E.D. Pa. 2010) ....................................................................... 18

*Shields v. Zuccarini*,
    254 F.3d 476 (3d Cir. 2001).................................................................................... 21

*Siffel v. Best Buy Co., Inc.*,
    No. 11-3713, 2012 WL 4619346 (E.D. Pa. Oct. 3, 2012) .......................................... 7

*Spiro v. Prudential Relocation, Inc.*,
    No. 1:06-cv-834, 2007 WL 675426 (M.D. Pa. Mar. 1, 2007) ................................... 17

*Sweitzer v. Oxmaster, Inc.*,
    No. 09-5606, 2010 WL 5257226 (E.D. Pa. Dec. 23, 2010)................................. 11, 12

*Tatum v. Takeda Pharmaceuticals N.A.*,
    *No*. 12-1114, 2012 WL 5182895 (E.D. Pa. Oct. 19, 2012)........................................ 12

*Temple University v. White*,
    941 F.2d 201 (3d Cir. 1991)..................................................................................... 21

*Thompson v. Med–Mizer, Inc.*,
    No. 10-2058, 2011 WL 1085621 (E.D. Pa. Mar. 18, 2011) ..................................... 12

*Touristic Enterprises Co. v. Trane, Inc.*,
    No. 09-02732, 2009 WL 3818087 (D.N.J. 2007) ....................................................... 5

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3d Cir. 2007)....................................................................................... 4

*Wilson v. Parisi*,
    549 F. Supp. 2d 637 (M.D. Pa. 2008) ....................................................................... 18

*Wolfe v. McNeil-PPC, Inc.*,
    773 F. Supp. 2d 561 (E.D. Pa. 2011) ....................................................................... 12

*Zollars v. Troy-Built, LLC*,
    No. 10-924, 2011 WL 7102573 (W.D. Pa. Dec. 21, 2011)...................................... 13

S<small>TATE</small> C<small>ASES</small>

*Albertson v. Wyeth*,
No. 2944, 2003 WL 21544488 (Pa. Com. Pl. Jul. 8, 2003) ................................................... 19

*Alston v. Parker,*
363 F.3d 229 (3d Cir. 2004)............................................................................................ 6

*Chesney v. Stevens*,
644 A.2d 1240 (Pa. Super. Ct. 1994) .......................................................................... 15

*DeSantis v. Frick*,
745 A.2d 624 (Pa. Super. Ct. 1999) .............................................................................. 9

*Farabaugh v. Pennsylvania Turnpike Comm'n*,
911 A.2d 1264 (Pa. 2006) ............................................................................................ 17

*Lance v. Wyeth*,
4 A.3d 160 (Pa. Super. Ct. 2010) ................................................................................ 10

*Lynch v. McStome & and Lincoln Plaza Assocsiates*,
548 A.2d 1276 (Pa. Super. Ct. 1988) ...................................................................... 9, 10

*Redland Soccer Club Inc. v. Department of the Army*,
696 A.2d 137 (Pa. 1997) .............................................................................................. 19

*Schenck v. K.E. David, Ltd.*,
666 A.2d 327 (Pa. Super. Ct. 1995) ............................................................................ 15

*Simmons v. Pacor, Inc.*,
543 Pa. 664, 674 A.2d 22 (Pa. 1996) ........................................................................... 19

*Styer v. Hugo*,
619 A.2d 347(Pa. Super. Ct. 1993) *aff'd*, 637 A.2d 276 (Pa. 1994) ........................ 15

*Valley Forge Towers South Condominium v. Ron–Ike Foam Insulators, Inc.*,
574 A.2d 641(Pa. Super. Ct. 1990) *aff'd*, 605 A.2d 798 (Pa. 1992) ........................ 17

*Weinberg v. Sun Co.*,
77 A.2d 442 (Pa. 2001) ................................................................................................ 18

S<small>TATUTES AND</small> R<small>ULES</small>

13 Pa. Cons. Stat. Ann. § 2314 .................................................................................... 14

13 Pa. Cons. Stat. Ann. § 2314(b)(3) ........................................................................... 14

Fed. R. Civ. P. 8 ....................................................................................................... 5, 12, 21

Fed. R. Civ. P. 9(b) .................................................................................................... 18, 19

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 4, 6

Fed. R. Civ. P. 15(a) ..................................................................................................... 6

## PRELIMINARY STATEMENT

Plaintiffs Daniel and Paula Slemmer respectfully submit this memorandum of law in opposition to Defendant Barnhardt Manufacturing Company's[1] ("Barnhardt" or "Defendant") motion to dismiss Plaintiffs' Class Action Complaint.  Plaintiffs commenced this action by filing a complaint against Defendants Barnhardt and McLaughlin Spray Foam Insulation, Inc. for damages caused by the installation of defective spray polyurethane foam insulation ("SPF") in Plaintiffs' home.  Plaintiffs seek to represent a class of other owners and residents of properties who have also suffered damages due to SPF insulation.

Plaintiffs filed their Class Action Complaint ("CAC") on November 20, 2012.  Plaintiffs' complaint describes the defective nature of Defendant's product, the lack of adequate warnings that accompany the product, the misrepresentations made to purchasers of the product, and the significant damages suffered by Plaintiffs.  Plaintiffs' allegations are not complicated, and are laid out in adequate detail to place Defendant on notice of the claims against it.  The frequent refrain throughout Defendant's motion is that Plaintiffs have not pled adequate facts to support their claims.  But simply ignoring whatever facts Defendant finds inconvenient in the pleading is no way for a motion to dismiss to be granted.  Moreover, Defendant's reading of Rule 8 would require far more detail than is necessary at this stage of the litigation.  For these reasons, and for those discussed below, Defendant's motion should be denied.  Should the Court decide not to deny the motion in its entirety, Plaintiffs request the opportunity to amend the claims the Court finds lacking.

---

[1]   Defendant Barnhardt Manufacturing Company was sued as "NCFI Polyurethanes" in Plaintiffs' Complaint.  In their motion, Defendant states that it was improperly named, and that Barnhardt Manufacturing Company is the proper name.  Plaintiffs will therefore refer to the Defendant as Barnhardt in this brief, and will take corrective action to fix the pleadings.

I.      FACTS

**The Parties**

Plaintiffs Daniel and Paula Slemmer are residents of Pennsylvania; in May 2012, Plaintiffs had Polyurethane Spray Foam Insulation ("SPF"), which is manufactured by Defendant, installed in their home.  CAC ¶ 6.  Defendant Barnhardt, a North Carolina company, creates, designs, manufactures, markets and distributes the SPF known as InsulStar® and Sealite™ throughout the United States.  *Id*. ¶ 8.  The products reach real property owners and residents through a network of authorized distributors and installers.  *Id.*  The authorized distributors[2] and installers are certified by Defendant to market the products.  *Id.*  Defendant trains and certifies the distributors and installers on the proper application of the products.  *Id.*

**The Defective Product**

Defendant's InsulStar® and Sealite™ polyurethane foam insulation, when applied as insulation, is a polyurethane closed cell foam created by the chemical reaction of two sets of highly toxic compounds brought together in a spraying apparatus.  *Id.* ¶ 11.  An installer, wearing protective gear and breathing apparatus, then applies the material into the attic, or similar areas, of a property.  *Id.*  When applied in the property, the resulting polyurethane foam is supposed to become inert and non-toxic.  *Id.*  However, SPF remains toxic after installation.  *Id.*

The United States Environmental Protection Agency ("EPA") has cautioned that exposure to SPF chemicals, including methylene diphenyl diisocyanate ("MDI"), can pose health

---

2    At ¶ 10 of the CAC, Plaintiffs note that Defendant Barnhardt, the moving party here, and distributor Defendant McLaughlin Spray Foam Company, would be refered to as "Defendants" for clarity.  Although Defendant attempts to portray this as improper "group pleading," the allegations against Defendant Barnhardt, as the manufacturer of the product, are plainly evident and provide sufficient notice as to the claims against it.

risks if persons are not adequately protected.  *Id.* ¶ 12.  The EPA has warned that if SPF is improperly applied, chemical contaminants may migrate to other parts of the structure and cause residual odors.  *Id*.

It is well-known in the industry that SPF is both unstable and prone to failure, because installation is complicated and difficult.  *Id.* ¶ 14.  The application requires strict adherence to application techniques.  *Id*.  A regular maintenance program must be followed, and temperatures during application must be carefully respected.  *Id.*  The product combines to create a toxic substance that continues to "off-gas" after installation.  *Id*. ¶ 16.

"Part A" of Defendant's SPF contains MDI, which is known as "Aromatic Isocyanate." It is classified as hazardous by OSHA, and exposure can cause severe respiratory injuries as well as irritation to skin and eyes.  *Id*. ¶ 17.  MDI is a known sensitizing toxicant to humans, meaning that once a person becomes sensitized to MDI, there may be no safe exposure level.  *Id.*  SPF compounds also typically contain known carcinogens such as Formaldehyde and other Volatile Organic Compounds that can be emitted after installation.  Upon information and belief, the resin's flame retardant includes Chlorinated Tris, a known carcinogen that has been banned in children's products and is required to be disclosed in a product's material safety data sheet.  *Id.* ¶ 18.

Defendant was aware that its certified installers, including Defendant McLaughlin Spray Foam Insulation, Inc., were not fit to install SPF, despite the advertised moniker of "Certified." *Id.* ¶ 15.  Barnhardt is aware that its SPF consists of toxic elements and that, even when installed according to their standards, SPF remains toxic and hazardous to residents of the homes where SPF is installed.  *Id*. ¶ 19.  The chemical creation process of polyurethane foam requires strict control and monitoring even in industrial conditions/factories, so as to avoid dangers to workers

3

and environmental exposure/release.  Thus, its creation and application in residential attics by inadequately trained "certified" installers, with no sure temperature or equipment controls, is completely suspect.  *Id.*

**Injuries and Damages**

Due to the defective nature of Defendant's design and manufacture of SPF, and the defective nature of the warnings, the application of SPF causes property damages and health hazards to occupants of installed homes.  The only remedy is the complete removal of the SPF.  The product's off-gassing creates irritants that cause headaches and other neurological issues, and eye, nose and throat irritations as well as respiratory issues in the occupants of homes with the defective SPA applied.  *Id.* ¶¶ 16, 22.

Further damages to Plaintiffs, and the class members, include costs of inspection, costs and expenses necessary to remedy the effects of toxic SPF as well as remove and replace SPF and other property that has been impacted by SPF, the loss of enjoyment of their home and property including costs and expenses associated with the need for other temporary housing, and/or damages associated with personal injuries.  *Id.* ¶ 27.  Thus, Plaintiffs have been exposed to harmful gases, suffered personal injury, and have been placed at an increased risk of disease.  *Id.* ¶ 28.

**II.      ARGUMENT**

**A.      Motion to Dismiss Standard**

To survive a motion to dismiss under Rule 12(b)(6), a civil plaintiff must allege facts that "'raise a right to relief above the speculative level[.]'"  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)).  A plaintiff's pleading requires "sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955).   To meet the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility."  *Id.*

"In *Twombly*, the Supreme Court used a 'two-pronged approach,' which it later formalized in *Iqbal*."  *Goode v. LexisNexis Risk & Information Analytics Grp., Inc.,* 284 F.R.D. 238, 243 (E.D. Pa. 2012) (quoting *Iqbal*, 556 U.S. at 679–80).   In utilizing this approach, "a district court first identifies those factual allegations that constitute nothing more than 'legal conclusions' or 'naked assertions.'"  *Goode*, 284 F.R.D. at 243 (quoting *Twombly*, 550 U.S. at 555, 557).   Such allegations are "not entitled to the assumption of truth" and must be disregarded.  *Id.* (quoting *Iqbal*, 556 U.S. at 679).   The court must then assess "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation [s] ... to determine" whether it states a plausible claim for relief.  *Id.* (quoting *Iqbal*, 556 U.S. at 680).

The Supreme Court reiterated the governing notice-pleading standard under Rule 8 of the Federal Rules of Civil Procedure:

> Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'  *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  In *Iqbal*, the Supreme Court further instructed that when presented with a motion to dismiss for failure to state a claim, a District Court must accept all of the complaint's well-pleaded facts as true.  *Iqbal*, 556 U.S. at 678.

The Third Circuit similarly observed, applying *Twombly* and *Iqbal*, that in evaluating the legal sufficiency of a complaint's allegations, a court "accept[s] all factual allegations as true,

construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F. 3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F. 3d 361, 374 n.7 (3d Cir. 2002)).

Therefore, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff need state "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Touristic Enterprises Co. v. Trane, Inc.*, No. 09-02732, 2009 WL 3818087, at *1 (D.N.J. 2007) (quoting *Iqbal*, 556 U.S. at 673). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 127 S. Ct. at 1955).

"The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The issue before the Court is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Touristic*, 2009 WL 3818087, at *1 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)); *see also Phillips*, 515 F.3d at 234 (relying on *Twombly* to hold that to survive a motion to dismiss a complaint must assert "enough facts to raise a reasonable expectation [] discovery will reveal evidence of the necessary element").

Additionally, F.R.C.P. Rule 15(a) declares that leave to amend "shall be freely given when justice so requires." According to the Third Circuit, "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004)).

As developed below, the Complaint states allegations that give rise to a plausible, not merely possible, entitlement to relief.  Plaintiffs' allegations are not "threadbare recitals of the elements of a cause of action," but instead provide more than sufficient detail for Defendant to have notice of the claims against it.

### B.    Plaintiffs Properly Plead a Negligence Claim Against Defendant

#### 1.    Plaintiffs Allege all Elements of a Negligence Claim

Under Pennsylvania law,[3] "[i]n any case sounding in negligence, a plaintiff must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff."  *Siffel v. Best Buy Co., Inc.*, No. 11-3713, 2012 WL 4619346, at *2 (E.D. Pa. Oct. 3, 2012) (citing *Farabaugh v. Pa. Tpk Comm'n,* 911 A.2d 1264, 1272–73 (Pa. 2006)).

Plaintiffs allege that Defendant, as a manufacturer of the insulation installed in Plaintiffs' homes, breached its duty of care by creating an unsafe product.  Defendant's argument that Plaintiffs have not pled negligence is completely unfounded because Defendant has ignored the detailed allegations listed in the facts section of this brief, as well as the remainder of the complaint's allegations.  Defendant is a designer, manufacturer, and marketer of PFI.  CAC ¶ 8. As such, Defendant breached its duty to the public by selling a defective product.  *Id.* ¶¶ 8, 11. Defendant has negligently failed to warn of its' products multiple hazards, *id.* ¶¶ 25, 52. Defendant failed to warn by not giving Plaintiffs any inkling whatsoever of the hazardous components of the insulation.  It is further defective due to its design, which releases hazardous

---

[3]    Defendant asserts in a conclusory manner, *see* Def. Br. at 6 n.2, that the Slemmers' claims are "necessarily governed by Pennsylvania law, as the Slemmers are Pennsylvania residents and the subject property, and therefore the alleged damages, is located in Pennsylvania."  Although Defendant does not brief any choice of law analysis in its motion, or provide the legal test by which it reached this result, for the purposes of this motion, Plaintiffs will address Pennsylvania law for their claims, although they reserve the right to address choice of law issues as this litigation progresses.

gases into Plaintiffs' homes, *see*, *e.g.*, *id.* ¶¶ 11-12, 21, and due to manufacturing defects, *see*, *e.g.*, *id.* ¶ 22.  Plaintiffs pled that they would not have purchased the product had its damaging side effects been disclosed.  *Id.* ¶ 20.  Plaintiffs have further alleged that they suffered multiple injuries due to Defendant's product.  *Id.* ¶ 21.   This fully satisfies Plaintiff's Rule 8 pleading responsibilities.

### 2.      The Complaint Properly Identifies Defendant's Negligent Conduct

Defendant contends that the complaint does not identify which defendant is alleged to have engaged in which supposedly negligent conduct.  *See* Defendant's Memorandum of Law ("Def. Br.") at 8.   This argument fails because a fair reading of the complaint obviously describes what negligent conduct the manufacturer of the product – the moving Defendant here – is responsible for.   This is the design of the product, the manufacture of the product, the inadequate warnings on the product, and the failure to provide for the safe installation of the product despite being aware of its hazards.[4]  At any rate, Defendant's contention certainly does not require dismissal of the claim with prejudice, because this issue can easily be addressed in an amended pleading.

### 3.      Plaintiffs do not Plead Separate Failure to Recall or Negligent Marketing Claims

As discussed above, Plaintiffs have pled a claim of negligence.  Plaintiffs have not pled a separate count of failure to recall, or negligent marketing.  Allegations related to Defendant's failure to recall its hazardous and defective product, and to Defendant's negligence in marketing, support Plaintiffs' contention that Defendant was negligent, and are properly considered in the

---

[4]   Defendant cites *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) for the proposition that a complaint "that lists 'in entirely general terms without any specification of any particular activities by any particular defendant' is 'nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatsoever.'"  *See* Def. Br. at 8.  That is not the case here, because Plaintiffs have comprehensively laid out the negligence of the manufacturer Defendant, and the multiple defects of the product.

negligence analysis.   Moreover, allegations concerning Defendant's marketing are related to Defendant's inadequate product warnings.  These are not stand alone claims.

Plaintiffs have alleged that "although [Defendant] markets its SPF's as a non-toxic safe product, they are really complex toxic chemical compounds that combine to create a toxic substance in homes.  CAC ¶ 16.  Further, Plaintiffs allege that Defendant's created inadequate warnings, labeling, and installer manuals.  *Id.* ¶ 25.  Plaintiffs also allege that Barnhardt trained the distributors/installers installing its SPF products, including McLaughlin, and Plaintiffs and Class Members relied on Barnhardt's certification of fitness to install Barnhardt's product when choosing the installer(s) of the subject SPF.  *Id.* ¶ 59.  Defendant's contention that "nothing Barnhardt is alleged to have done, or failed to do, with its marketing of SPF is alleged to have caused any injury to the Plaintiffs," *see* Def. Br. at 9, is thus false.  Moreover, Plaintiffs have alleged that Defendant marketed its SPF product as safe and non-toxic, *see* CAC ¶ 16, and omitted to disclose any of the hazards of its product, *see*, *e.g.*, *id.* ¶¶ 25, 48, 52, 101.

This is not a case where a Defendant discovers a defect in a product after the product has been on the market for some time.  Instead, Plaintiffs allege here that Defendant was aware of the hazards of its product at the time of sale.  Nor is it a case where some relatively unexpected type of use of the product will cause harm, and the chance of injury is remote.  Here, Plaintiffs have pled that the product is hazardous and extremely likely to cause both personal injury and property damage.

Moreover, in some circumstances, Pennsylvania Courts have imposed a continuing duty to warn.  For example, in *Lance v. Wyeth*, 4 A.3d 160 (Pa. Super. Ct. 2010), the Court noted that "[i]n imposing a continuing, post-sale duty to warn on a drug manufacturer, [the court was] cognizant that in *Lynch v. McStome and Lincoln Plaza Associates*, 378 Pa. Super. 430, 548 A.2d

9

1276 (1988) and *DeSantis v. Frick*, 745 A.2d 624 (Pa. Super. 1999), this Court held that there is no post-sale duty to warn about technological advances when a defect did not exist in the product at the time of sale." *Lance*, 4 A.3d at 168 n.4. These cases, however, "did not address the special circumstances attendant to the marketing, labeling and distribution of prescription drugs." *Id*. The Court concluded that *Lynch* and *DeSantis* were inapplicable to the case at bar, and confined the holdings in those cases to manufacturing operations that do not involve prescription drugs. *Id.*

### C. Defendant's Negligent Supervision of its Installers is Properly Pled

Plaintiffs have alleged that only distributors/installers that are certified by NCFU are authorized to install SPF, and Defendant McLaughlin was authorized and certified to distribute/install Barnhardt's SPF. CAC ¶ 58. To that end, Barnhardt trained the distributors/installers installing its SPF products, including McLaughlin, and Plaintiffs and Class Members relied on Barnhardt's certification of fitness to install Barnhardt's product when choosing the installer(s) of the subject SPF. *Id.* ¶ 59.

Plaintiffs do not rely on a "general duty to supervise." As alleged, Barnhardt trained the distributors/installers installing its SPF products, including McLaughlin, and Plaintiffs and Class Members relied on Barnhardt's certification of fitness to install Barnhardt's product when choosing the installer(s) of the subject SPF. *Id.* ¶ 59. This training and certification was an undertaking of Defendant that it had a duty to perform in a non-negligent manner.

### D. Plaintiffs' Strict Liability Claim under Pennsylvania Law is Properly Pled

"In a strict liability claim, a manufacturer or seller will be strictly liable if a defect in its product causes injuries to a user. There are two elements a plaintiff must prove to prevail in a

strict liability case: first, the product is defective, and second, the defect legally caused the injury." *Sweitzer v. Oxmaster, Inc*., No. 09-5606, 2010 WL 5257226, at *6 (E.D. Pa. Dec. 23, 2010) (citations and internal quotations marks omitted).

Although Defendant contends that the Third Circuit "has predicted that the Pennsylvania Supreme Court will hold that Pennsylvania product law liability is governed by the Restatement (Third) of Torts," Def. Br. at 11, even a cursory review of the product liability caselaw following *Berrier*[5] indicates that the issue of whether to apply the Second or Third Restatement of Torts to products liability claims is an enormously contentious issue. "Unfortunately, the current state of Pennsylvania products liability law can be described as, at best, unsettled, and, at worst, a maze of uncertainty, providing little guidance to manufacturers as to whether a product's design risks liability under Pennsylvania law or, for the inured, whether the circumstances of an individual case will support a legal remedy for harm caused by a manufacturer's product." *Sansom v. Crown Equip. Corp*., 880 F. Supp. 2d 648, 653 (W.D. Pa. 2012); *see also Lynn v. Yamaha Golf-Car Co*., No. 2:10-cv-01059, 2012 WL 3544774, at *10 (W.D. Pa. Aug. 16, 2012) ("Pennsylvania products liability law may be fairly seen as being in a state of profound uncertainty.").

As the court noted in *Carpenter v. Shu-Bee's, Inc*., No. 10-0734, 2012 WL 2740896 (E.D. Pa. July 9, 2012), "some Courts in this district and circuit have held that *Berrier* has

---

[5]    *Berrier v. Simplicity Mfg*., 563 F.3d 38 (3d Cir. 2009).  In 2008, the Supreme Court of Pennsylvania granted allocatur to specifically address whether it should apply Section 2 of the Third Restatement in place of Section 402A of the Second Restatement.  *See Bugosh v. I.U. North Am., Inc.,* 942 A.2d 897 (Pa. 2008).  In April, 2009, while *Bugosh* was pending before the Supreme Court of Pennsylvania, the Third Circuit Court of Appeals predicted that the state Supreme Court would adopt the Third Restatement's approach to product liability.  *Berrier v. Simplicity Manufacturing, Inc.,* 563 F.3d 38, 53 (3d Cir. 2009).  After extensive oral argument, the state Supreme Court declined to adopt the Restatement (Third) and instead dismissed the *Bugosh* appeal as improvidently granted by Order dated June 16, 2009.  *Bugosh v. I.U. North Am., Inc.,* 971 A.2d 1228, 1229 (Pa. 2009).

precedential value[6] …. Other Courts, however, have interpreted the Pennsylvania Supreme Court's dismissal of *Bugosh* as a clear indication that the Restatement (Second) remains the law in Pennsylvania and have not followed *Berrier*.[7]

This Court has dealt with this issue recently in two pharmaceutical products liability cases. First, in *Wolfe v. McNeil-PPC, Inc.*, 773 F. Supp. 2d 561, 567 (E.D. Pa. 2011), the Court examined Plaintiffs' products liability claims for strict liability under the Restatement (Second) of Torts §§ 402A and 402B. Then, in *Tatum v. Takeda Pharmaceuticals N.A.*, No. 12-1114, 2012 WL 5182895, at *2 (E.D. Pa. Oct. 19, 2012), another pharmaceutical product liability case, the Court again analyzed Plaintiffs' strict liability claims using the Restatement (Second) of Torts.

Thus, Plaintiffs do not agree with Defendant that the Restatement Third should apply to this case because the Pennsylvania Supreme Court has not adopted it, and well-reasoned opinions throughout the Pennsylvania federal district courts have continued to use the Second Restatement. However, even if the Court applies the Third Restatement here, Plaintiffs have properly pled a claim for strict liability. The alternate design to Defendant's SPF is an insulation which does not contain carcinogens and which does not release toxic gases, and which is already available throughout the country. Plaintiffs do not have to plead this in great detail under Fed.

---

[6]   *See, e.g., Covell v. Bell Sports, Inc.,* No. 09-2470, 2010 WL 4783043, at *4-5 (E.D. Pa. Sept. 8, 2010) (Diamond, J.) (applying *Berrier*); *Hoffman v. Paper Converting Mach. Co.*, 694 F. Supp. 2d 359, 364–65 (E.D. Pa. 2010) (Tucker, J.) (same); *Richetta v. Stanley Fastening Sys., L.P.*, 661 F. Supp. 2d 500, 506–07 (E.D. Pa. 2009) (Golden, J.) (same); *Martinez v. Skirmish, U.S.A., Inc.*, No. 07-5003, 2009 WL 1437624, at *3 (E.D. Pa. May 21, 2009) (Padova, J.) (same).

[7]   *See Thompson v. Med–Mizer, Inc.*, No. 10-2058, 2011 WL 1085621, at *7 (E.D. Pa. Mar. 18, 2011) (Gardner, J.) (citing *Sweitzer v. Oxmaster, Inc.*, 2010 WL 5257226, at *3–4 (E.D. Pa. Dec. 23, 2010) (Pratter, J.) (noting Superior Court of Pennsylvania *Bugosh* decision which affirmed applicability of Second Restatement remains unreversed)); *Durkot v. Tesco Equip., LLC*, 654 F. Supp. 2d 295, 298–99 (E.D. Pa. 2009) (Hart, M.J.) (factually distinguishing *Berrier* as involving bystander not product user); *Milesco v. Norfolk S. Corp.*, No. 1:09-1233, 2010 WL 55331, at *3 (M.D. Pa. Jan. 5, 2010) (Jones, J.) (rejecting *Berrier* but refusing to address intended user claim).

Rule Civ. Pro. Rule 8, and should the Court find this to be a deficiency in Plaintiffs' pleading, it is easily cured via amendment.

Additionally, "[t]he Restatement (Third) of Torts recognizes that product sellers may be subject to liability even if a reasonable alternative design did not exist at the time of sale." *Sansom*, 880 F. Supp. 2d at 657 n.6 (quoting Restatement (Third) of Torts § 2, cmt. e).   A plaintiff can show that "the product design was 'manifestly unreasonable' (i.e., the product had such low social utility coupled with a high degree of danger that the absence of a reasonable alternative design would not obstruct a plaintiff from obtaining relief)." *Id.* Defendant's product fits within this category.

Defendant's contentions regarding Plaintiffs' complaint, at Def. Br. 13, simply ignore the pleadings.   Plaintiffs do indeed specify how the product is defective, at CAC ¶¶ 14-20.   Plaintiffs explain how the defects caused injury, *see*, *e.g.*, *id.* ¶ 22, how the product is defective when it leaves Defendant's control, *id.* ¶¶ 11-21, and how the design is defective, *e.g.* ¶¶ 21-23.

Contrary to its assertion that Plaintiffs have not pled a manufacturing defect, Plaintiffs do make this allegation at CAC ¶ 75.   Defendants further contend that Plaintiffs do not describe what would have been "reasonable instructions or warnings."   Def. Br. at 12.   But this is exactly what the bulk of the complaint discusses – the abject failure of Defendant's warnings to describe, *inter alia*, (1) that exposure to SPF chemicals can pose health hazards if persons are not adequately protected, CAC ¶ 12; (2) that if SPF is not properly applied chemical contaminants may migrate to other parts of the structure, *id.*; (3) that SPF can "off-gas" after installation, creating irritants that cause headaches and neurological problems, *id.* ¶ 16; and (4) that SPF compounds typically contain known carcinogens such as Formaldehyde, *id.* ¶ 17.

13

### E.   Plaintiffs Have Adequately Pled a Breach of Warranty Claim

The Pennsylvania UCC protects buyers from loss where the goods purchased are below commercial standards or unfit for the buyer's purpose:

> § 2314 Implied Warranty; merchantability; usage of trade
>
> (a)  Sale by merchant.—Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind….
> (b)  Merchantability standards for goods.-Goods to be merchantable must be at least such as:
> ***
> (3) are fit for the ordinary purposes for which such goods are used.

> 13 Pa. Cons. Stat. Ann. § 2314.

"Pennsylvania law holds that to be merchantable, the goods must be fit for their ordinary purposes.  The word 'ordinary' is readily understood to mean 'common' or 'average.'" *Zollars v. Troy-Built, LLC*, No. 10-924, 2011 WL 7102573, at *5 (W.D. Pa. Dec. 21, 2011).  Plaintiffs establish a breach of implied warranty "by showing []that the equipment purchased was defective." *Id.* at *5; *Altronics of Bethlehem v. Repco, Inc*., 957 F.2d 1102, 1005 (3d Cir. 1992). "A product's defectiveness can be proven by pointing to some specific dereliction by the manufacturer in constructing or designing the product." *Id*., 2011 WL 7102573 at *5 (citations and internal quotations marks omitted).

"Both the implied warranty of merchantability and the warranty of fitness for a particular purpose arise by operation of law and serve to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." *Altronics*, 957 F.2d at 1105.  In order to be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." 13 Pa. Cons. Stat. Ann. § 2314(b)(3).  "The warranty of fitness for a particular purpose is more exacting." *Altronics*, 957 F.2d at 1105.  This warranty "requires that

14

the seller had reason to know of the buyer's particular purpose at the time of contracting and that the buyer was relying on the seller's expertise.  In that case, the goods are implicitly warranted to be fit for that particular purpose."  *Id*.  A plaintiff can demonstrate a defect by the submission of circumstantial evidence.  *Greco v. Bucciconi Eng'g Co.*, 407 F.2d 87, 89-90 (3d Cir.1969); *Altronics*, 957 F.2d at 1105.

Here, Plaintiffs have demonstrated how Defendant's product was defective and violative of a warrant of merchantability and fitness.  Insulation which releases toxic gas into a home, and injures its occupants, is below commercial standards, unfit for its purpose, and certainly not "common" or "average."  Plaintiffs have further pointed to the multiple derelictions of Defendant to demonstrate the product's defects.  To the extent that the Court finds that Plaintiffs have not properly pled an express warranty, Plaintiffs request the opportunity to amend their complaint to address this.

### F.       Unjust Enrichment is Properly Pled

"'Unjust enrichment' is essentially an equitable doctrine."  *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993), *aff'd*, 637 A.2d 276 (Pa. 1994).  In Pennsylvania, the elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995) (citations and internal quotation marks omitted).  "Where … unjust enrichment is found, the law implies a contract, … referred to as either a *quasi contract* or a contract implied in law, [which] requires that the defendant pay to plaintiff the value of the benefit conferred[.]"  *Chesney v. Stevens*, 644 A.2d 1240, 1245-46 (Pa.

15

Super. Ct. 1994) (citations omitted).  "In short, the defendant makes restitution to the plaintiff in *quantum meruit*."  *Id.*

Plaintiffs have properly pled a claim for unjust enrichment.  Plaintiffs have purchased a product - the SPF - known by Defendant to be defective.  CAC ¶¶ 14-16.  Defendant received funds from Plaintiffs for this product.  *Id.* ¶ 92.  The product, due to its defects, has caused damages to Plaintiffs, and must be replaced.  *Id.* ¶¶ 21-22, 26-27.  Because Defendant's product did not provide to Plaintiffs what it was marketed to do - to safely insulate their homes - it is inequitable for Defendants to retain the funds received from Plaintiffs.

Defendants claim that Plaintiffs "do not specifically allege that they conferred a benefit upon [moving Defendant] Barnhardt, as there is no allegation of any transaction or exchange of money between Plaintiffs and Barnhardt."  Def. Br. at 17.  As noted above, this allegation is made in ¶ 92.  Defendant further contends that "monetary damages are available to compensate Plaintiffs for any defect in the SPF product or negligence in its installation."  But Plaintiffs are permitted to plead in the alternative at this stage of the litigation.

### G.   Defendant Has Violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law

#### 1.   Plaintiffs Have Pled Reliance and Causation

Title 73, section 201–9.2 of the Pennsylvania statutes permits a "person who purchases or leases goods or services primarily for personal, family or household purposes" to bring a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL" or "CPL") "provided the consumer suffered an ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [the UTPCPL]."  *Jarzyna v. Home Properties, L.P.*, 763 F. Supp. 2d 742,

749 (E.D. Pa. 2011); *see also Brunwasser v. Trans World Airlines, Inc.,* 541 F. Supp. 1338, 1346–47 (W.D. Pa. 1982) (holding that the term "ascertainable loss" must be liberally construed and that "the ascertainable loss requirement of this act is designed merely to insure that individuals bringing suit have in fact been damaged by a deceptive trade practice").

Plaintiffs have pled both reliance and causation. Plaintiffs relied on Defendant, *see* CAC ¶ 20, and suffered injury as a result, *see* CAC ¶ 21. Thus, Defendant's contention that these elements have not been pled, *see* Def. Br. at 17, fails.

### 2.   The UTPCPL Does Not Require Vertical Privity

Contrary to Defendant's contention at Def. Br. 18, the Pennsylvania Superior Court has stated that privity is not required to be considered a purchaser under the statute, and has construed the language of the CPL broadly to effect its underlying purpose of enhancing the rights of consumers. *Valley Forge Towers S. Condo. v. Ron–Ike Foam Insulators, Inc.*, 574 A.2d 641, 647 (Pa. Super. Ct. 1990), *aff'd*, 605 A.2d 798 (Pa. 1992) (CPL liability may extend "to those in privity, those specifically intended to rely upon the fraudulent conduct, and those whose reasonable reliance was specifically foreseeable" and that such a construction of the statute is "more consonant with the remedial focus of the [CPL] on eradicating fraudulent business practices."); *see also Caciolo v. Masco Contractor Svcs. E., Inc.*, No. 04-962, 2004 WL 2677170, at *3 (E.D. Pa. Nov. 22, 2004) (strict privity not required to bring a CPL claim); *Spiro v. Prudential Relocation, Inc.*, No. 1:06-cv-834, 2007 WL 675426, at *10 (M.D. Pa. Mar. 1, 2007) ("[T]he Court concludes that Plaintiffs should be considered 'purchasers' within the meaning of the CPL, notwithstanding the fact that they did not personally tender any money to Defendant for Defendant's property management services."). Thus, Plaintiffs can recover under this theory.

17

### 3.   F.R.C.P. Rule 9(b) Does Not Apply to UTPCPL Claims

As noted by the United States District Court for the Eastern District of Pennsylvania in 2002, the version of the "catch-all" provision of the CPL in place prior to 1996 prohibited only "fraudulent" conduct. *Flores v. Shapiro & Kreisman*, 246 F. Supp. 2d 427, 432 (E.D. Pa. 2002). The act was then amended to prohibit both fraudulent and "deceptive" conduct. *Id.* Thus, a plaintiff states a claim under the "catch-all" provision of the CPL by satisfying the elements of common law fraud or by otherwise alleging deceptive conduct. *See Sheet Metal Workers Local 411 Health & Welfare Plan v. GlaxoSmithKline, Plc*, 737 F. Supp. 2d 380, 421 (E.D. Pa. 2010); *Genter v. Allstate Prop. and Cas. Ins. Co.*, No. 11-cv-0709, 2011 WL 2533075, at \*4 (W.D. Pa. June 24, 2011).

Thus, several federal courts have held that a CPL claim under the "deception" prong of the "catch-all" provision may be established by proving that the defendant engaged in deceptive conduct that created a likelihood of confusion or of misunderstanding without strict proof of all of the traditional elements of common law fraud. *See Wilson v. Parisi*, 549 F. Supp. 2d 637, 666 (M.D. Pa. 2008); *Mertz v. Donzi Marine, Inc.*, No. 04-55, 2007 WL 710263, at \*11 (W.D. Pa. Mar 06, 2007) (same); *Flores v. Shapiro & Kreisman,* 246 F. Supp. 2d 427, 432 (E.D. Pa. 2002) (same); *In re Patterson,* 263 B.R. 82, 92–93 (Bankr. E.D. Pa. 2001).[8]

*Weinberg v. Sun Co.*, 777 A.2d 442 (Pa. 2001), cited by Defendant, does not stand for the proposition that a UCL claim must conform to Rule 9(b) pleading standards. *Weinberg* is a Pennsylvania state case and the claim is pled under state law – there would be no reason for the Pennsylvania Supreme Court to apply the federal pleading law to this cause of action. Moreover,

---

[8]   *But see Rock v. Voshell*, 397 F. Supp. 2d 616, 622 (E.D. Pa. 2005); *Giangreco v. United States Life Ins. Co.*, 168 F. Supp. 2d 417, 424 (E.D. Pa. 2001).

"[g]iven the Pennsylvania Supreme Court's recent statement that a plaintiff alleging violations of the CPL" must show wrongful conduct or representation and harm as a result of the reliance, "without reference to the other elements of common law fraud, the Court cannot assume that the requirements of Rule 9(b) should be applied to claims under the CPL." *Caciolo*, 2004 WL 2677170 at *5 n.2.

### H.      Medical Monitoring and Injunctive Relief is Warranted

#### 1.      Plaintiffs' Medical Monitoring Claim is Properly Pled

"In *Simmons v. Pacor, Inc*., 543 Pa. 664, 674 A.2d 22 (Pa. 1996), [the Pennsylvania] Supreme Court recognized medical monitoring as a viable cause of action under Pennsylvania law." *Albertson v. Wyeth*, No. 2944, 2003 WL 21544488, at *6 (Pa. Com. Pl. Jul. 8, 2003). A medical monitoring claim is available to plaintiffs who do not have a presently detectable injury, but are at risk of developing latent disease. *Simmons v. Pacor, Inc*., 674 A.2d 232, 239-40 (Pa. 1996).

In *Redland Soccer Club Inc. v. Dep't of the Army,* 696 A.2d 137 (Pa. 1997), the Pennsylvania Supreme Court extended medical monitoring claims to non-asbestos-related injuries and articulated the necessary elements to state a claim for medical monitoring: 1) exposure greater than normal background levels; 2) to a proven hazardous substance; 3) caused by defendant's negligence; 4) as a proximate result of the exposure, plaintiffs have a significantly increased risk of contracting a serious latent disease; 5) a monitoring procedure exists that makes the early detection of the disease possible; 6) the prescribed monitoring regime is different from that normally recommended in the absence of exposure; and 7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. *Redland,* 696 A.2d at 145-46; *see also Albertson*, 2003 WL 21544488 at *6.

Defendant claims that the complaint is "utterly devoid of any factual averments that would support these claims for equitable and injunctive relief." Def. Br. at 20. This is simply false. The irreparable harm to Plaintiffs is damage to both their health and property caused by Defendant's product. CAC ¶¶ 21, 27, 28. Diseases and conditions to monitor for are cancer and respiratory illness. *Id.* ¶¶ 16-18, 22. The substances an air monitoring program would be designed to detect include, for example, MDK and formaldehyde. *Id.* ¶¶ 17-19. Reasonable inferences from these pleadings are that a recall or removal would alleviate the danger to both Plaintiffs' health and to their property, and a public awareness campaign would warn of the hazards of Defendant's product. Further, Plaintiffs have alleged that MDI is "a known sensitizing toxicant to humans, meaning that once a person becomes sensitized to MDI there may be no safe exposure level." *Id.* ¶ 18. Plaintiffs' claims are similar to those of the Plaintiffs in *Albertson*, 2003 WL 21544488, which the court found sufficient to state a medical monitoring claim.

Defendant questions Plaintiffs' assertion that they have been exposed to greater than normal levels of toxic gases/compounds – "how they know this about themselves and Class Members remains a mystery." Def. Br. at 21. As an initial matter, this exposure must be assumed true for purposes of this motion because it is supported factually, and is not a bare legal conclusion. And Plaintiffs have pled how this would be true - they have a hazardous concoction of chemicals installed in their homes. CAC ¶¶ 14-21. Thus, the permissible inference from these facts is that Plaintiffs have been exposed to greater than normal levels of toxic gases/compounds. Defendant further contends that "the serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment are not identified." Def. Br. at 21. This is also incorrect, as Plaintiffs note *supra.*

20

Defendant cites no caselaw requiring Plaintiffs to plead the details Defendant seeks regarding medical monitoring relief.  *See* Def. Br. at 21.  For instance, there is no requirement cited that Plaintiffs must describe in detail the diagnostic testing program that might be used. That is because Rule 8 does not require this level of detail.  But a reading of the complaint shows that Plaintiffs have indeed provided sufficient detail to put Defendant on notice of the claim it faces.

### 2.       Plaintiffs Have Demonstrated the Need for Injunctive Relief

Plaintiffs' complaint requests injunctive relief in addition to the medical monitoring claim.  In deciding whether to grant a permanent injunction,[9] the court must consider whether:

> (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.

*Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001); *see also Temple Univ. v. White*, 941 F.2d 201, 214-25 (3d Cir. 1991).  The court "is required to tailor the scope of its remedy in order to fit the nature of the violation it has found."  *Temple Univ.*, 941 F.2d at 215.

Plaintiffs meet these requirements.  Due to the multiple defects of Defendant's product, it is likely they will succeed on the merits of their claims.  Plaintiffs will be irreparably injured if the conditions of the injunction, described at CAC ¶ 107, are not met.  Plaintiffs have further shown that it is in the public interest to educate the public about the hazards of SPF.  The scope of the remedy, as required, fits the nature of the problems caused by Defendant's product.

---

[9]   To the extent that the Complaint is not sufficiently clear as to the type of injunction sought, Plaintiffs submit that this can be remedied via amendment of the complaint.

## __CONCLUSION__

Plaintiffs' complaint meets the applicable pleading standards.  As a result, Defendant's motion to dismiss should be denied in its entirety.


Respectfully submitted,

SEEGER WEISS LLP


By: /s/ Jonathan Shub
Jonathan Shub (Pa. Bar # 53965)
jshub@seegerweiss.com
Christopher A. Seeger
cseeger@seegerweiss.com
1515 Market Street, Suite 1380
Philadelphia, PA 19102
T: (215) 564-2300
F: (215) 851-8029

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true copy of the foregoing was served electronically via the Court's electronic filing system on the 1st day of March, 2013, upon all counsel of record.

Dated:   March 1, 2013

/s/ Jonathan Shub
Jonathan Shub