IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL SLEMMER and PAULA SLEMMER, Individually, and on behalf of all others similarly situated,**<br>                          **Plaintiffs,**<br><br>      v.<br><br>**MCGLAUGHLIN SPRAY FOAM INSULATION, INC. and BARNHARDT MANUFACTURING CO.,**<br>                          **Defendants.** | **CIVIL ACTION**<br><br><br><br><br><br>**NO. 12-6542** |

**DuBois, J.**                                                                                                                                 **July 3, 2013**

**M E M O R A N D U M**

**I.      INTRODUCTION**

        Plaintiffs Daniel and Paula Slemmer, on behalf of a similarly situated class, have sued two corporations, Barnhardt Manufacturing Co. ("Barnhardt"), and McGlaughlin Spray Foam Insulation, Inc. ("McGlaughlin"). Barhardt is the manufacturer of a type of home insulation known as spray polyurethane foam ("SPF") and McGlaughlin is a certified installer of SPF. Plaintiffs allege that SPF is a toxic substance that creates health hazards for those living in homes where it is used. Both defendants have filed motions to dismiss the Class Complaint, and plaintiff has filed a cross-motion for discovery. For the reasons set forth below, the Court grants in part and denies in part defendants' motions, and denies plaintiffs' cross-motion as moot.

**II.     FACTS**[1]

        SPF is a type of insulating foam created by spraying certain compounds into an "attic (or similar) areas of a subject property . . . ." (Compl. at ¶11.) Plaintiffs allege in their Complaint that SPF is comprised of "highly toxic compounds" and that SPF "remains toxic" after installation.

---

[1] As required on a motion to dismiss, the Court takes all plausible factual allegations contained in plaintiffs' Complaint to be true.

(Id.)  Plaintiffs further state that SPF causes "property damage and health hazards to occupants of installed homes such that the only remedy is the complete removal of the SPF."  (Id. at ¶13.)

The Slemmers are Pennsylvania residents who had SPF, manufactured by Barnhardt, installed in their home by McGlaughlin in May 2012.  (Id. at ¶6.)  According to the Complaint, the installation of SPF has resulted in "off-gassing, damaging the real and personal property of Plaintiffs and Class Members and/or caused personal injuries resulting in eye irritations, sore throats and cough, nausea, fatigue, shortness of breath, and/or neurological harm."  (Id. at ¶22.)

In the Complaint plaintiffs assert six claims against both defendants: (1) Negligence, (2) Strict Liability, (3) Breach of Express and/or Implied Warranties, (4) Unjust Enrichment, (5) Violation of Consumer Protection Acts, and (6) Equitable and Injunctive Relief and Medical Monitoring.  In addition, plaintiffs have alleged a negligent supervision claim against Barnhardt only.

## III.  LEGAL STANDARD

Rule 12(b) (6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion.  In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff . . . ."  Phillips v. County of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotations omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'"  Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

In the Complaint, plaintiffs assert claims on behalf of four putative classes against both Barnhardt and McGlaughlin. Specifically, plaintiffs propose a nationwide class and Pennsylvania subclass of owners and residents of property containing SPF manufactured, sold, distributed and/or supplied by Barnhardt. Plaintiffs also propose a nationwide subclass and Pennsylvania subclass of owners and residents of property containing SPF that was, inter alia, sold, distributed, supplied or installed by McGlaughlin. McGlaughlin first argues that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), on the ground that the Court lacks subject matter jurisdiction under the Class Action Fairness Act ("CAFA").

Under CAFA, district courts may hear class actions where the amount in controversy exceeds $5 million and any member of a class of plaintiffs is a citizen of a state different from any defendant. See 28 U.S.C. § 1332(d)(2). However, McGlaughlin cites the local controversy exception under CAFA, which states that district courts "shall decline to exercise jurisdiction" over a case where more than two-thirds of the members of all proposed plaintiff classes are citizens of the state in which the action was originally filed, and at least one defendant is a citizen of the state in which the action was originally filed. Id. at § 1332(d)(4)(A).

McGlaughlin avers that CAFA's local controversy exception is applicable to the case and that, as a consequence, the Court lacks subject matter jurisdiction. In support of its argument, McGlaughlin submitted declarations and other materials outside the pleadings. Specifically, McGlaughlin contends that it is incorporated in and has its principal place of business in Pennsylvania, and that over 80% of the plaintiffs in the proposed classes against it are located in Pennsylvania, citing the Declaration of Dik McGlaughlin, president of McGlaughlin.

McGlaughlin concedes that if such submissions are not excluded, the Court is required to treat the motion as one for summary judgment under Fed. R. Civ. P. 12(d). (McGlaughlin Mot. at 2 n.3.) Plaintiffs oppose McGlaughlin's motion and have also filed a cross-motion for relief under Rule 56(d), which would allow, inter alia, additional time for discovery if the Court treats the instant motion to dismiss as one for summary judgment.

The Court rejects McGlaughlin's argument on this issue. The language of the local controversy exception requires a court to decline jurisdiction only where "greater than two-thirds of the members of *all proposed plaintiff classes in the aggregate*, are citizens of the State in which the action was originally filed . . . ." Id. (emphasis added); see also Smith v. Honeywell Int'l Inc., 2013 WL 2181277 (D.N.J. May 20, 2013) (aggregating different classes for purposes of exception). McGlaughlin, as the party objecting to federal jurisdiction, has the burden of showing that the local controversy exception is applicable. See Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 153 (3d Cir. 2009).

First, the parties had not conducted any discovery as of the date the motions were filed. Thus, the Court concludes that treatment of McGlaughlin's motion as one for summary judgment would be inappropriate. Because the Court does not treat McGlaughlin's motion as one for summary judgment, plaintiffs' motion for relief under Rule 56(d) is denied as moot. The Court

notes that even if it considered the submitted documents, McGlaughlin has presented insufficient evidence of the citizenship of "all proposed plaintiff classes in the aggregate," including those classes against Barnhardt, to establish the lack of subject matter jurisdiction under the local controversy exception of CAFA. See 28 U.S.C. § 1332(d)(4)(B). Thus, McGlaughlin has not carried its burden to show that the exception should apply. McGlaughlin's motion on this ground is denied.

      B.     Count I- Negligence

Plaintiffs first allege that defendants were negligent by, inter alia, manufacturing or selling a defective product, designing a defective product, and/or failing to warn of SPF's dangers. "Under Pennsylvania law, in any case sounding in negligence, a plaintiff must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff." Siffel v. Best Buy Co., Inc., 2012 WL 4619346, at *2 (E.D. Pa. Oct. 3, 2012) (quoting Farabaugh v. Pa. Turnpike Comm'n, 590 Pa. 46, 911 A.2d 1264, 1272–73 (Pa. 2006)). "[A] manufacturer or seller of a product having dangerous propensities has a duty to warn those who will come in contact with the product of those dangers." Sherk v. Daisy-Heddon, a Div. of Victor Comptometer Corp., 498 Pa. 594, 615 (Pa. 1982).

Defendants argue that the Complaint lacks sufficient factual allegations to support a finding that defendants breached a duty of care to plaintiffs. The Court rejects defendants' argument. According to the Complaint, defendants breached their duty to plaintiffs by designing, manufacturing and/or selling an unsafe product, and by failing to warn plaintiffs of the dangers associated with SPF. Plaintiffs aver that these breaches of duty caused both property damage and

personal injuries, resulting in substantial loss.  The Court concludes that plaintiffs have adequately pled a cause of action for negligence against defendants.[2]

    C.    <u>Count II- Negligent Supervision</u>

Plaintiffs next allege that Barnhardt purported to certify and train personnel to install SPF, creating a "legal duty to adequately supervise those certified installers."  (Compl. at ¶60.)  Barnhardt responds that Pennsylvania does not recognize such a legal duty to supervise similar to that created by an employer-employee relationship, and as such this claim must be dismissed.  The Court agrees.

"Pennsylvania law allows a claim against an employer for negligent supervision of an employee . . . ."  <u>IRPC, Inc. v. Hudson United Bancorp</u>, 2002 WL 372945, at *4 (Pa. Com. Pl. Jan. 18, 2002) (citing <u>Mullen v. Topper's Salon & Health Spa, Inc.</u>, 99 F.Supp.2d 553, 556 (E.D. Pa. 2000)).  However, plaintiffs cite no law, and the Court has found none, supporting the contention that Barnhardt's training and certification created a legal duty to supervise SPF installers.  Further, plaintiffs do not rely on any "general duty to supervise" in support of their claim.  (Resp. to Barnhardt, at 10.)  As plaintiffs have not stated a claim of negligent supervision, Barnhardt's motion on this ground is granted, and Count II of the Complaint is dismissed.   This dismissal is without prejudice to plaintiffs' right to file an amended complaint consistent with this Memorandum if warranted by the facts.

    D.    <u>Count III- Strict Liability</u>

Defendants next argue that plaintiffs' strict liability claim is insufficiently pled pursuant to the Restatement (Third) of Torts and must be dismissed.  Plaintiffs respond that the Restatement

---

2 Defendants also move to dismiss plaintiffs' claims of Failure to Recall and Negligent Marketing, as they are not proper causes of action under Pennsylvania law.  The Court credits plaintiffs' response that they do not allege such independent causes of action, but rather such allegations may be relevant to a general negligence analysis, and to an inquiry into product warnings used by defendants.  Therefore, the Court need not address this aspect of defendants motions to dismiss.

(Second) of Torts applies in Pennsylvania, and that their claim is properly pled thereunder. "Unfortunately, the current state of Pennsylvania products liability law can be described as, at best, unsettled, and, at worst, a maze of uncertainty . . . . " Sansom v. Crown Equip. Corp., 880 F. Supp. 2d 648, 653 (W.D. Pa. 2012). In brief, the Supreme Court of Pennsylvania previously adopted the Restatement (Second) of Torts with respect to strict products liability. See Webb v. Zern, 422 Pa. 424 (Pa. 1966). However, the Third Circuit has repeatedly predicted that Pennsylvania will adopt the Restatement (Third) of Torts in this field. See Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 47 (3d Cir. 2009); Covell v. Bell Sports, Inc., 651 F.3d 357, 367 (3d Cir. 2011). Despite this, the Supreme Court of Pennsylvania has not yet adopted the Restatement (Third) of Torts. See e.g., Beard v. Johnson & Johnson, Inc., 41 A.3d 823, 839 (Pa. 2012) (Bear, J. concurring) (stating his belief that the "current law of Pennsylvania . . . is Section 402A of the Restatement Second").

The Supreme Court of Pennsylvania has recently granted allocator on this issue in Tincher v. Omega Flex, Inc., 64 A.3d 626 (Pa. 2013). This Court defers ruling on the question of which Restatement governs plaintiffs' strict liability claim until Tincher is decided, or until otherwise warranted by the facts and circumstances of the case.

E.     Count IV- Express/Implied Warranties

Plaintiffs next claim that defendants breached express warranties concerning SPF. "To create an express warranty, the seller must expressly communicate the terms of the warranty to the buyer in such a manner that the buyer understands those terms and accepts them." Goodman v. PPG Indus., Inc., 849 A.2d 1239, 1243 (Pa. Super. Ct. 2004). Defendants argue that plaintiffs have not pled the terms of any express warranty and have not explained how such alleged express warranties were breached. Plaintiffs do not dispute this, and instead "request the opportunity to

7

amend their Complaint" to address any deficiency found by the Court. (Resp. to McGlaughlin, at 15.) The Court concludes that as plaintiffs have not alleged what express warranties were breached in this case, they have not properly pled a breach of express warranties. Defendants' motions on this ground are granted, and that part of Count IV alleging a breach of express warranties is dismissed. This dismissal is without prejudice to plaintiffs' right to amend the Complaint to include allegations of breach of express warranties consistent with this Memorandum if warranted by the facts.

Plaintiffs additionally allege that defendants breached the implied warranty of merchantability, and the implied warranty of fitness for a particular purpose regarding SPF. "Both the implied warranty of merchantability and the warranty of fitness for a particular purpose arise by operation of law and serve to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992). Barnhardt argues that plaintiffs have not provided "any substance or factual support" for their argument that SPF was unfit for the purpose intended. (Barnhardt Mot. at 15.) The Court rejects Barnhardt's argument.

Plaintiffs alleged that the installation of SPF caused "off-gassing, damaging the real and personal property of Plaintiffs and Class Members and/or caused personal injuries resulting in eye irritations, sore throats and cough, nausea, fatigue, shortness of breath, and/or neurological harm." (Compl. at ¶22.) Plaintiffs further allege that "SPF is unfit, defective and not merchantable for its intended purpose due to [those] damaging side effects . . . . " (Id. at ¶87.) As plaintiffs have alleged facts supporting their claim that SPF was unfit for its intended purpose, the Court concludes that plaintiffs have adequately pled a breach of the implied warranty of merchantability

and the implied warranty of fitness for a particular purpose. Defendants' motions to dismiss on this ground are accordingly denied.

      F.      Count V- Unjust Enrichment

Plaintiffs next contend that defendants were unjustly enriched by the sale of SPF to plaintiffs. "A claim of unjust enrichment requires the plaintiff to show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." Bair v. Purcell, 500 F. Supp. 2d 468, 495 (M.D. Pa. 2007).

Defendants move to dismiss this claim for two reasons. First, defendants state that because plaintiffs' suit is based on a written contract, a claim for unjust enrichment is improper. "[T]he doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract . . . ." Wilson Area Sch. Dist. v. Skepton, 586 Pa. 513, 520 (Pa. 2006). However, plaintiffs have not admitted that a valid contract existed between the parties. (See Pl. Cross-Mot. at 15.) Given that plaintiffs are permitted to plead in the alternative, "it is premature at this juncture to dismiss the unjust enrichment claim." Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 626 (E.D. Pa. 2010); see also Alpart v. Gen. Land Partners, Inc., 574 F. Supp. 2d 491, 507 (E.D. Pa. 2008) ("Because the Federal Rules of Civil Procedure enable the plaintiffs to plead in the alternative, a claim for breach of contract and unjust enrichment can coexist at this early stage of litigation.") The Court denies defendants' motions to dismiss on this ground.

Second, Barnhardt argues that the unjust enrichment claim is insufficiently pled, as plaintiffs do not allege that they conferred a benefit on Barnhardt. The Court disagrees. According to the Complaint, "[d]efendants received money as a result of Plaintiffs' and Class

9

Members' purchases of Defendants' SPF, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members." (Compl. at ¶92.) As plaintiffs alleged that they conferred a benefit on Barnhardt, they have properly pled an unjust enrichment claim, and defendants motions are denied on this ground.

### G. Count VI- Violation of Consumer Protection Law

Plaintiffs next allege that defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). 73 Pa. Stat. Ann. § 201-1, et seq.[3] Defendants move to dismiss this claim on three grounds: (1) plaintiffs have not alleged justifiable reliance, (2) plaintiffs have not alleged that they purchased SPF from Barnhardt, and (3) plaintiffs have not satisfied the particularity requirements of Fed. R. Civ. P. 9(b). These arguments are addressed in turn.

#### 1. Justifiable Reliance

First, defendants argue that plaintiffs have failed to allege justifiable reliance. In response, plaintiffs contend they are entitled to a presumption of reliance, and that in any event, they have pled both reliance and causation. "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 501 (Pa. 2004). Accordingly, "a plaintiff alleging violations of the Consumer Protection Law must prove justifiable reliance." Toy v. Metro. Life Ins. Co., 593 Pa. 20, 46, 928 A.2d 186, 202 (Pa. 2007). Such evidence of reliance must go beyond "simply a causal connection between the misrepresentation and the harm," and a plaintiff must "show that he justifiably bought the product in the first place (or engaged in some other detrimental activity)

---

3 Plaintiffs allege that defendants violated the UTPCPL and consumer protection laws in states other than Pennsylvania where putative class members live. Defendants make no argument concerning other states' laws and thus the Court need not address the law of sates other than Pennsylvania.

10

because of the misrepresentation." Hunt v. U.S. Tobacco Co., 538 F.3d 217, 222 n.4 (3d Cir. 2008).

Plaintiffs contend that they are entitled to a presumption of reliance where, as here, defendants allegedly failed to disclose material defects in the product they manufactured and/or sold. In support, plaintiffs cite a state trial court decision, Zwiercan v. Gen. Motors Corp., 2003 WL 1848571, at*2 (Pa. Com. Pl. Mar. 18, 2003), which held that a plaintiff was entitled to a "class wide presumption of reliance where it can be proven that the defect may cause serious bodily harm or death." However, this case law has not been followed, and was later rejected by courts interpreting the UTPCPL. In Hunt v. U.S. Tobacco Co., the Third Circuit "reject[ed] [plaintiff's] suggestion that he enjoys a presumption of reliance, as this suggestion is inconsistent with Pennsylvania case law." 538 F.3d at 227. Similarly, in Beck-Ellman v. Kaz USA, Inc., the court rejected Zwiercan in holding that "justifiable reliance requires individualized proof and is not subject to a presumption under Pennsylvania law." 283 F.R.D. 558, 570 (S.D. Cal. 2012). The Court thus concludes that plaintiffs are not entitled to a presumption of reliance under the UTPCPL.

Plaintiffs also argue that they have sufficiently pled justifiable reliance. According to the Complaint, defendants marketed and advertised SPF as a "safe, 'green,' and non-toxic product," and such marketing "caused actual damages to consumers, including Plaintiffs and Class Members who purchased defendants' SPF system because of defendants' representations and conduct." (Compl. at ¶101.) Plaintiffs further plead that "they would not have purchased SPF had the damaging side effects been disclosed to Plaintiffs." (Id. at ¶20.) The Court agrees that plaintiffs have alleged justifiable reliance upon specific misrepresentations by defendants.

11

2.   Privity

Barnhardt next argues that plaintiffs have not alleged that they purchased SPF directly from Barnhardt, and therefore plaintiffs may not claim that Barnhardt violated the UTPCPL. According to the Complaint, the Slemmers had SPF, which was manufactured by Barnhardt, installed in their home by McGlaughlin.   The UTPCPL provides a cause of action for "[a]ny person who purchases or leases goods or services . . . and thereby suffers any ascertainable loss of money or property . . . as a result of the use or employment by any person of a . . . practice declared unlawful" under the UTPCPL. 73 Pa. Stat. Ann. § 201–9.2.   "A plaintiff need not be in direct privity with a defendant to bring an action under the UTPCPL for the defendant's wrongful conduct."   Johnson v. MetLife Bank, N.A., 883 F. Supp. 2d 542, 547-48 (E.D. Pa. 2012). However, courts have uniformly held that a plaintiff must have purchased the product in issue in order to have standing under the UTPCPL.   See e.g., Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 240 (3d Cir. 2002) (holding doctor lacked standing because he was not "purchaser" of surgical screws when he did not purchase them himself and was not acting as a representative of those who did).

In the case most on point, Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc., 393 Pa. Super. 339 (Pa. Super. 1990), a condominium association agreed to have a contractor install a "roofing membrane," and the manufacturer of the membrane issued a warranty guaranteeing the membrane for 10 years. Id. at 342.   Only two years after the installation the roof began to leak and the condominium association sued both the contractor and the manufacturer under the UPTCPL.   Id. at 343.   The manufacturer disclaimed liability on the ground that it had not sold the membrane directly to the condominium.   The Pennsylvania Superior Court noted that, "[i]f we imply a strict technical privity requirement, [the manufacturer] and others would be

able to successfully evade liability for alleged failures to honor their long-term warranties based upon the simple expedient of supplying their product and their warranties to intended ultimate purchasers, through a general contractor." Id. at 350.  Considering the purpose of the statute, the court ruled that "liability under [the UPTCPL] . . . extend[s] to those in privity, those specifically intended to rely upon the fraudulent conduct, and those whose reasonable reliance was specially foreseeable." Id. at 350-51.  Accordingly, the Superior Court determined that liability extended to the manufacturer.

Later decisions have followed the contours of liability set forth in Valley Forge.  For instance, in Mikola v. Penn Lyon Homes, Inc., 2008 WL 2357688, at *2 (M.D. Pa. June 4, 2008), plaintiffs contracted with builders for a construction project, which included a purchase order for a modular home.  Plaintiffs claimed that the project was never completed according to the terms of the contract, and sued both the builders as well as the manufacturer of the modular home.  Id. The manufacturer argued that they were not liable because the contract in the case was with the builders.  However, citing Valley Forge, the court noted that, "the Superior Court has expressly rejected the requirement of strict privity of contract between the manufacturer and buyer for a claim to be brought under the UTPCPL." Id. at *4.  Accordingly, the court rejected the argument that plaintiffs had not "purchased" the modular home from the manufacturer, and found that the manufacturer could be liable under the UTPCPL.

The Court concludes that plaintiffs have properly alleged liability on the part of Barnhardt under the UTPCPL.  "Pennsylvania courts have ruled that the [UTPCPL] should be interpreted very broadly so as to effectuate as fully as possible the legislature's purpose of preventing unfair or deceptive practices." Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC, 737 F. Supp. 2d 380, 421-22 (E.D. Pa. 2010).  While plaintiffs did not

purchase SPF directly from Barnhardt, <u>Valley Forge</u> and <u>Mikola</u> confirm that the lack of direct privity between consumer and manufacturer is not a barrier to liability under the UTPCPL. Further, plaintiffs' alleged use of Barnhardt's SPF for its intended purpose was "specially foreseeable," as plaintiffs were consumers of the product manufactured and marketed by Barnhardt. See <u>Valley Forge</u>, 393 Pa. Super. at 350-51. Such foreseeability is buttressed by plaintiffs contention that Barnhardt regularly trained and certified SPF installers, who themselves were responsible for the installation of SPF in plaintiffs' home. See also <u>Woodward v. Dietrich</u>, 378 Pa. Super. 111, 131-32 (Pa. Super. 1988) (finding that installer of defective sewage line could specially foresee subsequent transfer of property, and that new owners would be unaware of defects). As Barnhardt thus falls within the ambit of liability set forth in <u>Valley Forge</u>, the Court denies Barnhardt's motion on this ground.

    3.    <u>Pleading with Particularity</u>

Barnhardt next argues that plaintiffs have not sufficiently pled their UTPCPL claim in accordance with Fed. R. Civ. P. 9(b). That provision states in part that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Barnhardt avers that the UTPCPL is founded on the prevention of fraud and as such, a plaintiff is required to plead a claim under the UTPCPL pursuant to Rule 9(b). The Court rejects Barnhardt's argument.

The so-called "catch-all" provision of the UTPCPL prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. Ann. § 201-2(xxi). Accordingly, a "plaintiff may succeed under the catch-all provision by satisfying the elements of common-law fraud or by otherwise alleging deceptive conduct." <u>Vassalotti v. Wells Fargo Bank, N.A.</u>, 732 F. Supp. 2d 503, 510 (E.D. Pa. 2010).

Because a plaintiff need not plead fraud under the UTPCPL, "a plaintiff alleging deceptive conduct may proceed without satisfying the particularity requirement of Federal Rule of Civil Procedure 9(b)." Id. at 511; see also Schnell v. Bank of New York Mellon, 828 F. Supp. 2d 798, 807 (E.D. Pa. 2011) (where plaintiff references deceptive acts he "therefore does not need to prove all of the elements of common-law fraud or meet the particularity requirement of Federal Rule of Civil Procedure 9(b)"); Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 469 (E.D. Pa. 2009) ("[T]o the extent plaintiffs allege deceptive conduct, plaintiffs do not need to allege the elements of common law fraud or, as a result, meet Rule 9(b)'s particularity requirement . . . .").

In this case, plaintiffs allege that "defendants engaged in . . . unconscionable, unfair and deceptive acts and practices." (See Compl. at ¶99.) As such claims are proper under the UTPCPL "catch-all" provision and do not constitute allegations of fraud, plaintiffs need not meet the heightened particularity requirements of Fed. R. Civ. P. 9(b). Barnhardt's motion to dismiss on this ground is denied.

McGlaughlin separately argues that if the Court does not dismiss plaintiffs' UTPCPL claims, the Court should order plaintiffs to provide a more definite statement pursuant to Fed. R. Civ. P. 9(b) and 12(d). As the Court has concluded that plaintiffs need not satisfy the requirements of Rule 9(b), McGlaughlin's motion to dismiss on this ground is denied.

H. Count VII- Injunctive and Equitable Relief and Medical Monitoring

In Count VII, plaintiffs make several claims regarding injunctive relief, equitable relief, and medical monitoring. Defendants move to dismiss each of these claims, and the Court addresses them in turn.

### 1. Medical Monitoring

Pennsylvania has recognized medical monitoring claims as separate and apart from traditional tort claims involving physical injury. Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def. of the U.S., 548 Pa. 178 (Pa. 1997). "[A]n action for medical monitoring seeks to recover only the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm . . . ." In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 850 (3d Cir. 1990). The elements necessary to state a claim for medical monitoring are: "(1) exposure greater than normal background levels, (2) to a proven hazardous substance; (3) caused by defendants' negligence; (4) as a proximate result of the exposure, plaintiffs have a significantly increased risk of contracting a serious latent disease; (5) a monitoring program procedure exists that makes the early detection of the disease possible: (6) the prescribed monitoring regime is different from that normally recommended in the absence of exposure; (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles." Lewis v. Bayer AG, 66 Pa. D. & C.4th 470 (Com. Pl. 2004) (citing Redland Soccer Club, 548 Pa. at 145). Defendants move to dismiss plaintiffs' medical monitoring claim for two reasons: (1) plaintiffs have alleged actual injuries inconsistent with a monitoring claim, and (2) plaintiffs have not pled the required elements.

First, McGlaughlin argues that plaintiffs "are claiming physical injuries as a result of their exposure to the polyurethane foam insulation," and that medical monitoring "is only available to individual[s] who do not have an actual injury . . . . " (McGlaughlin Mot. at 21.) As required by the elements of a medical monitoring claim, plaintiffs must show a heightened risk of contracting a serious disease and set forth a monitoring program that enables early detection of that disease. Such a claim is therefore inapplicable to a situation where plaintiffs have already suffered

compensable physical injuries.  Cf. Simmons v. Pacor, Inc., 543 Pa. 664, 679 (Pa. 1996) (finding medical monitoring appropriate for "asymptomatic pleural thickening" which was not itself compensable injury but may worsen.).  Plaintiffs in this case have alleged that SPF caused "personal injuries . . . [including] eye irritations, sore throats and cough, nausea, fatigue, shortness of breath, and/or neurological harm."  (Compl. at ¶22.)  However, Fed. R. Civ. P. 8(d)(3) establishes that "a party may state as many separate claims or defenses as it has, regardless of consistency."  Thus, as plaintiffs are permitted to plead in the alternative, their claims of actual physical injuries do not require dismissal of their medical monitoring claim at this stage of the litigation.  McGlaughlin's motion to dismiss on this ground is denied.

Second, defendants argue that plaintiffs have not pled the facts supporting the above elements necessary for a claim of medical monitoring.  In response, plaintiffs aver that at this stage of the litigation they need not set out details regarding a monitoring program, and that as such, their pleadings are sufficient to state a medical monitoring claim.  However, courts have held that a plaintiff must allege specific facts which support the elements required under Redland Soccer Club.  For instance, in Albertson v. Wyeth Inc., 63 Pa. D. & C.4th 514, *9 (Com. Pl. 2003), the court there found sufficient plaintiffs' allegation that "they are at a significantly increased risk of harm for developing breast cancer and . . . that the monitoring regime is different from that normally recommended."  By contrast, the court in In re Avandia Mktg., Sales Practices & Products Liab. Litig., 2011 WL 4006639, *3 (E.D. Pa. Sept. 7, 2011), dismissed plaintiff's medical monitoring claim because "[t]he claim for medical monitoring essentially tracks the elements of the claim, but without any specific facts alleged (e.g., as to what medical monitoring procedure exists and how it differs from the monitoring for all patients with Type 2 diabetes)."

In this case the Complaint states that SPF has caused "headaches and other neurological issues, and eye, nose and throat irritations as well as respiratory issues . . . ." (Compl. at ¶16.) The Complaint also references certain toxic and carcinogenic chemicals allegedly used in SPF. (Id. at ¶17-18.) However, the Complaint alleges only that, "Plaintiffs and Class Members have developed a significantly increased risk of contracting a serious latent disease." (Id. at ¶114.) Precisely what type of "latent disease" is not specified in the Complaint. Further, plaintiffs' alleged monitoring program involves "air monitoring in the structures owned by Plaintiffs and Class Members." (Compl. at ¶22.) Such a claim constitutes environmental monitoring, and does not constitute "periodic medical examinations necessary to detect the onset of physical harm," as required in a medical monitoring claim. See In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 850 (3d Cir. 1990).

Plaintiffs have failed to identify either a serious latent disease which requires monitoring or a medical monitoring procedure suitable in this case. The Court thus concludes that plaintiffs have failed to state a claim for medical monitoring. Defendants' motions on this ground are granted, and plaintiffs' claim for medical monitoring is dismissed. This dismissal is without prejudice to plaintiffs' right to file an amended complaint setting forth a medical monitoring claim consistent with this Memorandum if warranted by the facts.

   2. Equitable/Injunctive Relief

Defendants also argue that plaintiffs' claims for equitable and injunctive relief should be dismissed. Count VII of the Complaint requests: (1) a recall of the SPF, (2) remediation of plaintiffs' and class members' homes, (3) that defendants cease and desist from misrepresenting the dangers of SPF, and (4) that defendants institute a public awareness campaign to alert the class and public to the dangers associated with SPF. While such relief is set forth in Count VII as a

separate cause of action, "[a] request for injunctive relief by itself does not state a cause of action . . . An injunction is a remedy, not a separate claim or cause of action.  A pleading can . . . request injunctive relief in connection with a substantive claim, but a separately pled claim or cause of action for injunctive relief is inappropriate."  Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010).  The Court notes that plaintiffs' included in their prayer for relief, "injunctive relief."  (Compl. at 23.)  Accordingly, defendants' motions on this ground are granted and plaintiffs' separate claim for injunctive relief is dismissed.  This dismissal does not affect plaintiffs' request for injunctive relief in the prayer for relief at the end of the Complaint.

## V.   CONCLUSION

For the foregoing reasons, the Court grants those parts of defendants' motions seeking dismissal of plaintiffs' claims of negligent supervision, breach of express warranties, medical monitoring, and injunctive relief.  These dismissals are without prejudice to plaintiffs right to file an amended complaint consistent with this Memorandum if warranted by the facts.  The Court defers ruling on those parts of defendants' motions seeking dismissal of plaintiffs' strict liability claim.  Defendants' motions are denied in all other respects.  Plaintiffs' cross-motion for discovery is denied as moot.  An appropriate order follows.