IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL SLEMMER and PAULA SLEMMER, Individually, and on behalf of all others similarly situated,<br>            Plaintiffs,<br><br>           v.<br><br>MCGLAUGHLIN SPRAY FOAM INSULATION, INC. and BARNHARDT MANUFACTURING CO.,<br>            Defendants. | CIVIL ACTION<br><br><br><br><br>NO. 12-6542 |

**DuBois, J.**                                                                 **October 16, 2013**

## M E M O R A N D U M

### I.     INTRODUCTION

Plaintiffs Daniel and Paula Slemmer have brought a class action against two corporations, Barnhardt Manufacturing Co. ("Barnhardt") and McGlaughlin Spray Foam Insulation, Inc. ("McGlaughlin"). Barnhardt is the manufacturer of a type of home insulation known as spray polyurethane foam ("SPF"), and McGlaughlin is a certified installer of SPF. Plaintiffs allege that SPF is a toxic substance that creates health hazards for those living in homes where it is used.

By Order dated July 3, 2013, this Court granted in part and denied in part defendants' motion to dismiss plaintiffs' Class Action Complaint. Plaintiffs have since amended their Class Action Complaint and both defendants filed motions to dismiss Count VI of the Amended Class Action Complaint. For the reasons set forth below, the Court grants defendants' motions.

### II.    FACTS[1]

The Court incorporates by reference the facts set out in its July 3, 2013 Memorandum.

---

[1] As required on a motion to dismiss, the Court takes all plausible factual allegations contained in plaintiffs' Complaint to be true.

See Slemmer v. McGlaughlin Spray Foam Insulation, Inc., No. 12-cv-6542, 2013 WL 3380590 (E.D. Pa. July 8, 2013).

### III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotation marks omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level.'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that a defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

Finally, the complaint must allege facts sufficient to give a defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 545 (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)). A "formulaic recitation of the elements" of an offense will not suffice. Id. at 555.

IV.   DISCUSSION

    A.    <u>Plaintiffs' Original Class Action Complaint</u>

Plaintiffs' original Class Action Complaint included a medical-monitoring claim. Plaintiffs alleged that exposure to SPF has caused them to "develop[] a significantly increased risk of contracting a serious latent disease," and that "[m]onitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure." Pls.' Compl. ¶¶ 114-115.

By Order dated July 3, 2013, the Court, <u>inter alia</u>, dismissed plaintiffs' medical-monitoring claim, concluding, "[p]laintiffs have failed to identify either a serious latent disease which requires monitoring or a medical monitoring procedure suitable in this case." <u>Slemmer</u>, 2013 WL 3380590, at *10.

    B.    <u>Plaintiffs' Amended Class Action Complaint</u>

Plaintiffs' filed their Amended Class Action Complaint on July 17, 2013, reasserting, <u>inter alia</u>, a medical-monitoring claim. Defendants again move to dismiss that claim.

Pennsylvania has recognized medical monitoring claims as separate and apart from traditional tort claims involving physical injury. <u>Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def. of the U.S.</u>, 696 A.2d 137 (Pa. 1997). "[A]n action for medical monitoring seeks to recover only the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm . . . ." <u>In re Paoli R.R. Yard PCB Litig.</u>, 916 F.2d 829, 850 (3d Cir. 1990). The elements necessary to state a claim for medical monitoring are: "(1) exposure greater than normal background levels, (2) to a proven hazardous substance; (3) caused by defendants' negligence; (4) as a proximate result of the exposure, plaintiffs have a significantly increased risk of contracting a serious latent disease; (5) a monitoring program procedure exists that makes the

early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of exposure; (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles." Lewis v. Bayer AG, 66 Pa. D. & C.4th 470 (Ct. C. P. 2004) (citing Redland Soccer Club, 696 A.2d at 145-46).

A plaintiff must allege specific facts which support the elements required under Redland Soccer Club. Compare In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., No. 10-cv-2401, 2011 WL 4006639, *3 (E.D. Pa. Sept. 7, 2011) (dismissing plaintiff's medical-monitoring claim because "[t]he claim for medical monitoring essentially tracks the elements of the claim, but without any specific facts alleged (e.g., as to what medical monitoring procedure exists and how it differs from the monitoring for all patients with Type 2 diabetes)"), with In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., No. 98-cv-20626, 1999 WL 673066, *3 (E.D. Pa. Aug. 26, 1999) (conditionally certifying a class medical-monitoring claim, which specified monitoring by "echocardiograms, electrocardiograms, chest x-rays and perfusion lung scans"), and Albertson v. Wyeth Inc., 63 Pa. D. & C.4th 514, 2003 WL 21544488, at *9 (Ct. C. P. 2003) (finding sufficient plaintiffs' allegation that "they are at a significantly increased risk of harm for developing breast cancer").

In their Amended Class Action Complaint, plaintiffs allege the following[2] with respect to their medical-monitoring claim: (1) defendants' SPF can release "VOCs and other toxins . . . [that] can cause headaches, neurological issues, and respiratory ailments including asthma, lung damage, other respiratory and breathing problems, and skin, eye and throat irritation," Pls.' Am. Compl. ¶ 101; (2) due to such toxins, class members are at a "significantly increased risk of contracting serious latent diseases, including but not limited to lung damage, and throat, eye and

---

[2] Plaintiffs make additional allegations regarding "sensitization" to SPF. Pls. Am. Compl. ¶¶ 102, 103, 106. While plaintiffs do not argue in their briefing that "sensitization" is the subject of their medical-monitoring claim, the Court considers such allegations in making its decision.

4

nose irritations," id. ¶ 105; (3) monitoring procedures, "includ[ing] diagnostic exams and pharmaceutical interventions," would "prevent or mitigate . . . the adverse consequences of SPF exposure," id. ¶ 110; and (4) such procedures "are different from those normally recommended in the absence of the exposure," id.  Defendants move to dismiss plaintiffs' medical-monitoring claim on the basis that plaintiffs have not pled three of the required elements listed in Redland Soccer Club.

First, defendants argue plaintiffs fail to specify a "serious latent disease" because phrases such as "neurological issues," "respiratory ailments," and "permanent lung damage and respiratory problems" are vague catch-all phrases that can encompass a wide variety of conditions or symptoms.  Pls.' Am. Compl. ¶ 101; Barnhardt Mot. to Dismiss Count VI of Pls.' Am. Class Action Compl. 3 ("Barnhardt Mot.").  In response, plaintiffs reassert that the hazardous materials at issue can cause several health problems such as "headaches, neurological issues, and respiratory ailments, including asthma and lung damage."  Mem. of Law in Opp'n to Mot. to Dismiss Pls.' Medical Monitoring Claim Filed by Def. Barnhardt Manufacturing Co. 6 ("Pls.' Mot.").  Plaintiffs argue in their memorandum that "permanent lung damage is the disease that the monitoring program will be established to guard against."  Id.

The Court concludes plaintiffs have failed to identify a "serious latent disease." Plaintiffs' allegation that the "serious latent disease" to be monitored is "lung damage, and throat, eye and nose irritations" does not give defendants "fair notice of what the . . . claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 545 (citing Conley, 355 U.S. at 47).  Cf. Albertson, 2003 WL 21544488, at *9 (Ct. C. P. 2003) (finding sufficient plaintiffs' allegation that "they are at a significantly increased risk of harm for developing breast cancer").  For example, plaintiffs allege that they are at an increased risk of developing "lung damage."  Pls.'

Am. Compl. ¶ 105. Lung damage, however, can encompass a host of different diseases, some of which may be patent or discoverable through routine medical checkups. Furthermore, defendants must know which lung diseases are relevant when conducting discovery or retaining experts.

Second, defendants argue that plaintiffs' allegation that the monitoring regime would include "diagnostic exams and pharmaceutical interventions" is insufficient because it fails to describe the nature of the "exams" or "interventions." Barnhardt Mot. 4; Def.'s, McGlaughlin Spray Foam Insulation, Inc., Mot. to Dismiss Count VI (Medical Monitoring) of Pls.' Am. Compl., Pursuant to Rule 12(b)(6) and Supporting Br. 4 ("McGlaughlin Mot."). In response, plaintiffs reassert that monitoring procedures, "which . . . include[] diagnostic exams and pharmaceutical interventions," can "prevent or mitigate" the injuries associated with SPF exposure. Pls.' Mot. 6.

The Court concludes plaintiffs' proposed monitoring regime of "diagnostic tests and pharmaceutical interventions" fails to identify specific medical monitoring procedures as required. The Amended Class Action Complaint fails to aver that a monitoring program procedure exists that makes early detection of a specific disease possible. See Redland Soccer Club, 696 A.2d at 145-46 (holding that plaintiff must allege "a monitoring program procedure exists that makes the early detection of the disease possible").

Finally, defendants argue that plaintiffs fail to provide facts identifying how the proposed "diagnostic exams" differ from those "normally recommended in the absence of exposure." Redland Soccer Club, 696 A.2d at 145-46. Plaintiffs respond by arguing that "lung damage is not detectable by normal medical treatment." Pls.' Mot. 6.

The Court concludes plaintiffs' allegation that "[m]onitoring procedures exist that make

the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure" is insufficient because it is a "formulaic recitation of the element[]."  Twombly, 550 U.S. at 555 (2007); see also Redland Soccer Club, 696 A.2d at 145-46 (finding that plaintiff must allege "the prescribed monitoring regime is different from that normally recommended in the absence of exposure").

## V.    CONCLUSION

For the foregoing reasons, the Court grants defendants' motions to dismiss plaintiffs' medical-monitoring claim.  Because plaintiffs have already amended their complaint to address this deficiency, the Court concludes further amendment would be futile.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008) (finding that district courts need not permit amendment where "an amendment would be inequitable or futile").  Accordingly, this dismissal is with prejudice.  An appropriate order follows.